OPINION
{¶ 1} Plaintiffs-Appellants, Chadwick and Julie Ann Thompson (hereafter collectively referred to as the "Thompsons"), appeal a judgment of the Paulding County Court of Common Pleas, granting summary judgment to Defendants-Appellees, David Bagley ("Bagley"), Drew Altimus ("Altimus"), and the Antwerp Local School District ("Antwerp Local") (hereafter collectively referred to as the "Appellees"). The Thompsons contend that the trial court's determination that Antwerp Local is entitled to political subdivision immunity under R.C. 2744.02(A)(1) was in error. They also challenge the trial court's finding that Bagley and Altimus are entitled to immunity as the employees of a political subdivision under R.C. 2744.03(A)(6). Finding that material issues of fact remain, we reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.
 {¶ 2} In September of 2002, Bagley was the superintendent of Antwerp Local, and Altimus was an elementary school physical education teacher for the same district. Located within the Antwerp Local school building is an indoor pool. As part of the physical education curriculum, Altimus used the indoor pool to teach the fundamentals of swimming to students in the first through sixth grades.
 {¶ 3} On September 30, 2002, Altimus was conducting a fourth grade physical education class in the Antwerp Local swimming pool. The students were in the fifth week of a six week unit and were required to perform a freestyle front crawl test. Altimus observed the students perform the test from the lifeguard chair next to the pool and assigned each student a score based upon his/her performance. One of the students in the class was the Thompsons' son, Christopher Thompson ("Christopher").
 {¶ 4} After all of the students had performed the test, Altimus read each student his/her score. He then told the students that they had free time for the remainder of the period. At this time, Altimus was still sitting in the lifeguard chair. After telling the students that they had free time, Altimus observed Christopher under the water lying motionless with his arms and legs sprawled out. Thinking that Christopher was only joking around, Altimus ordered another student, Cody Sisco ("Sisco"), to get Christopher above the surface. After Sisco failed to get Christopher's attention, Altimus began climbing down from the lifeguard chair and told another student, Avery Hook ("Hook"), to bring Christopher above the surface. Hook was also unsuccessful in bringing Christopher up. After Hook's failed attempt, Altimus ordered a third student, Shaile Chamberlain ("Chamberlain"), to get Christopher. Chamberlain successfully brought Christopher up from the bottom of the pool, and Altimus pulled Christopher's limp body out of the pool.
 {¶ 5} Altimus began to perform Cardiopulmonary Resuscitation ("CPR") on Christopher and told the other students to get help. Other school employees came into the pool area and began assisting Altimus with the CPR. The school secretary telephoned 911 and requested an ambulance. Christopher was then transported via ambulance to Paulding County Hospital where he was later pronounced dead. After an autopsy, the county corner determined drowning to be the probable cause of Christopher's death.
 {¶ 6} Subsequently, the Thompsons, as the co-administrators of Christopher's estate, brought suit against Altimus and Bagley individually and against Antwerp Local as their employer. In their complaint, the Thompsons alleged that Altimus and Bagley had negligently, with malicious purpose, in bad faith, and/or recklessly staffed and operated the swimming pool. Their claim against Antwerp Local was based on the negligence of its employees, Altimus and Bagley. The Thompsons also maintained that liability was imposed on Altimus, Bagley, and Antwerp Local by R.C. 3749.99 for their collective failure to comply with Ohio Adm. Code 3701-31.
 {¶ 7} In response, the Appellees filed a motion for summary judgment, claiming that Antwerp Local was immune from liability under R.C.2744.02(A)(1) and that Bagley and Altimus were immune from liability under R.C. 2744.03(A)(6). The Thompsons countered that Antwerp Local was not immune from liability based upon the exceptions to immunity stated in R.C. 2744.02(B)(4) and (5). Furthermore, the Thompsons claimed that none of the defenses in R.C. 2744.03(A) were available to Antwerp Local. Regarding Altimus and Bagley's alleged immunity, the Thompsons asserted that neither was immune from liability as both had acted with malicious purpose, in bad faith, or in a wanton or reckless manner. R.C.2744.03(A)(6)(b). They also claimed that Altimus and Bagley were not immune from liability because the Revised Code expressly imposed liability upon them for their violations of Ohio Adm. Code 3701-31. R.C.2744.03(A)(6)(c). Finally, the Thompsons maintained that R.C. 2744 violates Sections 5 and 16, Article I of the Ohio Constitution.
 {¶ 8} After considering the summary judgment motions, the trial court found that Antwerp Local was immune from liability under R.C.2744.02(A)(1). It also found that Altimus and Bagley were immune from liability under R.C. 2744.03(A)(6). Accordingly, the trial court granted summary judgment to all three and dismissed the Thompsons' complaint. It is from this judgment that the Thompsons appeal, presenting two assignments of error for our review.
 Assignment of Error I The trial court erred in its decision that Appellee, Antwerp LocalSchool District, was entitled to immunity from liability provided bySection 2744.01(A)(1) (sic) of the Ohio Revised Code.
 Assignment of Error II The trial court erred in its decision that Appellees, David Bagley andDrew Altimus, were entitled to immunity from liability provided bySection 2744.03(A)(6) of the Ohio Revised Code.
 {¶ 9} Because both assignments of error address the trial court's decision to grant the Appellees summary judgment, we will use the following standard of review throughout this entire opinion.
 Standard of Review {¶ 10} An appellate court reviews a summary judgment order de novo.Hillyer v. State Farm Mut. Auto. Ins. Co. (1999), 131 Ohio App.3d 172,175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. Diamond Wine Spirits, Inc. v. Dayton Heidelberg Distr. Co., 148 Ohio App.3d 596,2002-Ohio-3932, at ¶ 25, citing State ex rel. Cassels v. Dayton CitySchool Dist. Bd. of Ed., 69 Ohio St.3d 217, 222, 1994-Ohio-92. Summary judgment is appropriate when, looking at the evidence as a whole: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, it appears that reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C); Horton v. Harwick Chemical Corp., 73 Ohio St.3d 679, 686-687,1995-Ohio-286. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 358-59,1992-Ohio-95.
 {¶ 11} The party moving for the summary judgment has the initial burden of producing some evidence which affirmatively demonstrates the lack of a genuine issue of material fact. State ex rel. Burnes v. AthensCity Clerk of Courts, 83 Ohio St.3d 523, 524, 1998-Ohio-3; see, also,Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; they may not rest on the mere allegations or denials of their pleadings. Id.
 Assignment of Error I {¶ 12} In their first assignment of error, the Thompsons dispute the trial court's judgment that Antwerp Local is immune from liability under R.C. 2744.02(A)(1). They claim that the exceptions to immunity listed in R.C. 2744.02(B)(4) and (5) are applicable. Furthermore, they claim that none of the defenses to liability listed in R.C. 2744.03(A) are relevant. Finally, the Thompsons allege that R.C. 2744 violates Sections5 and 16, Article I of the Ohio Constitution and that political subdivision immunity is unconstitutional. Due to the nature of these arguments, we elect to address them out of the order in which they are presented in the Thompsons' brief.
 Constitutionality of R.C. 2744 {¶ 13} The Thompsons' make two claims regarding the constitutionality of R.C. 2744. The first is that the statute violates Section 5, Article I
of the Ohio Constitution, which is the right to a jury trial. The second is that it violates Section 16, Article I of the Ohio Constitution, which allows suits to be brought against the State. For the reasons stated below, we find no merit in either claim.
 {¶ 14} A properly enacted statute enjoys a presumption of constitutionality. Fabrey v. McDonald Police Dept., 70 Ohio St.3d 351, 352,1994-Ohio-368, citing State ex rel. Dickman v. Defenbacher (1955),164 Ohio St. 142, paragraph one of the syllabus. Therefore, it is incumbent upon the party challenging the statute to prove beyond a reasonable doubt that the statute violates a constitutional provision. Id.
 {¶ 15} The Thompsons' claim that R.C. 2744 violates Section 5, ArticleI of the Ohio Constitution relies on the Ohio Supreme Court case ofButler v. Jordan, 92 Ohio St.3d 354, 2001-Ohio-204. In Butler, a plurality of the Supreme Court stated in dicta that it would have found R.C. 2744 unconstitutional under Section 5, Article I had the issue been properly before it.
 {¶ 16} Section 5, Article I guarantees that the right to a jury trial "shall be inviolate." However, this provision does not guarantee a jury trial in every case. Bundy v. Five Rivers Metroparks,152 Ohio App.3d 426, 2003-Ohio-1766, at ¶ 45, quoting Ratcliff v.Darby, 4th Dist. No. 02-CA-2832, 2002-Ohio-6626, at ¶ 25, citing Beldingv. State, ex rel. Heifner (1929), 121 Ohio St. 393, 396; Keller v. StarkElec. Ry. Co. (1921), 102 Ohio St. 114, 116. Rather, jury trials are guaranteed only in those cases in which the right existed at the time the Ohio Constitution was adopted. Bundy at ¶ 45, quoting Ratcliff at ¶ 25, citing Belding, 121 Ohio St. at paragraph one of the syllabus;Sorrell v. Thevenir, 69 Ohio St.3d 415, 421, 1994-Ohio-38; Mason v. Stateex rel. McCoy (1898), 58 Ohio St. 30, 55.
 {¶ 17} The rationale of the plurality in Butler was that citizens of Ohio had the right to bring actions in negligence against political subdivisions at the time Section 5, Article I was ratified. Butler,92 Ohio St.3d at 372. Thus, a plaintiff in such an action would have been entitled to demand a jury trial prior to the Constitution's ratification. Id. Therefore, the plurality reasoned that R.C. 2744 acted to illegally abrogate the constitutionally protected right of a plaintiff to have a jury determine the issue of a political subdivision's negligence. Id. We decline to follow this reasoning.
 {¶ 18} Numerous appellate courts have refused to declare R.C. 2744 unconstitutional despite the plurality's pronouncement in Butler. InShadoan v. Summit County Children Services Bd., 9th Dist. No. 21486, 2003-Ohio-5775, at ¶ 7, the court stated that:
Although we recognize that in Butler v. Jordan (2001), 92 Ohio St.3d 354,750 N.E.2d 554, a plurality of the Supreme Court expressed the beliefthat R.C. 2744 et seq. may be unconstitutional, a majority of the courtdid not concur in that opinion. In fact, some of the justices expressedopposing views in a spirited dissent. "Furthermore, no appellate court inthis state has followed the Butler plurality's opinion and found [R.C.2744 et seq.] unconstitutional." Walker v. Jefferson Cty. Bd. ofCommrs., 7th Dist. No. 02 JE 14, 2003-Ohio-3490, at ¶ 20. See, also,Bundy v. Five Rivers Metroparks, 152 Ohio App.3d 426, 2003-Ohio-1766,at ¶ 45; Ratcliff v. Darby, 4th Dist. No. 02CA2832, 2002-Ohio-6626, at¶ 25; Eischen v. Stark Cty. Bd. of Commrs., 5th Dist. No. 2002CA00090,2002-Ohio-7005, at ¶ 20. See Shalkhauser v. Medina, 148 Ohio App.3d 41,2002-Ohio-222, at ¶ 11, fn1; Rehm v. General Motors Corp.(2001), 143 Ohio App.3d 226, 231, 757 N.E.2d 1172; Witt v.Fairfield Public School District (April 22, 1996), 12th Dist. No.CA95-10-169. Thus, until the plurality's views command a majority on theOhio Supreme Court, we will not strike down the legislation asunconstitutional.
 {¶ 19} The above paragraph was cited with approval by Spencer v.Lakeview Schl. Dist., 11th Dist. No. 2002-T-0175, 2004-Ohio-5303, at ¶ 12. Furthermore, both the 2nd District in Bundy at ¶ 45 and the 4th District in Ratcliff at ¶ 25 have used language almost identical to that in Shadoan in finding that R.C. 2744 does not violate Section 5, Article I. We agree with the reasoning put forth by these courts and hold that we will not declare a statute unconstitutional based upon the legal reasoning of a plurality of the Supreme Court that was stated in dicta.
 {¶ 20} Furthermore, we disagree with the legal reasoning behind the plurality's decision in Butler. The Thompsons fail to establish that their right to a trial by jury is guaranteed by the Ohio Constitution "even in a case where it has been held that [they] have no cause of action."Bundy at ¶ 47, quoting Winkle v. Toledo (July 25, 1998), 6th Dist. No. L-97-1335. In addressing the issue of whether a statute that abolishes a cause of action violates the right to a trial by jury, the United States Supreme Court has stated that the right to a jury trial is not violated because "the act abolishes all right of recovery in ordinary cases, and therefore leaves nothing to be tried by jury." Mountain Timber Co. v.Washington (1917), 243 U.S. 219, 235, 37 S.Ct. 260; see, also, Dimond v.District of Columbia (C.A.D.C., 1986), 792 F.2d 179, 190, 253 U.S.App.D.C. 111. Nothing in R.C. 2744 strips a defendant of the right to a trial by jury; rather, a defendant's entire cause of action is abrogated.
 {¶ 21} Based on all of the reasons stated above, we reject the Thompsons' argument that R.C. 2744 violates Section 5, Article I of the Ohio Constitution.
 {¶ 22} The Thompsons also maintain that R.C. 2744 violates their right to bring suit against the state under Section 16, Article I of the Ohio Constitution, which provides that:
All courts shall be open, and every person, for an injury done him inhis land, goods, person, or reputation, shall have remedy by due courseof law, and shall have justice administered without denial or delay.Suits may be brought against the state, in such courts and in suchmanner, as may be provided by law.
(Emphasis added.)
 {¶ 23} The Ohio Supreme Court has heard such arguments before and upheld R.C. 2744 as constitutional. Fabrey, 70 Ohio St.3d at 354-355;Fahnbulleh v. Strahan, 73 Ohio St.3d 666, 669, 1995-Ohio-295. In Fabrey,
the Court stated that the right to sue the State was not fundamental and that the above italicized clause in Section 16, Article I allowing the State to be sued was not selfexecuting. Fabrey, 70 Ohio St.3d at 354-355, citing Krause v. State (1972), 31 Ohio St.2d 132, paragraphs one and three of the syllabus, overruled in part by, Schenkolewski v. ClevelandMetroparks Sys. (1981), 67 Ohio St.2d 31, 35-36 (holding that the abrogation of sovereign immunity could be achieved judicially as well as statutorily). Therefore, "the State of Ohio is not subject to suits in tort without the consent of the General Assembly." Id.
 {¶ 24} It has been recognized that a political subdivision is a "mere agent of the State" and subject to the same immunity as the State when performing a governmental function. Bundy at ¶ 38, quoting Wooster v.Arbenz (1927), 116 Ohio St. 281, 284-285. Furthermore, "at the time of the passage of the second paragraph of Section 16, Article I, the ability of citizens to sue the State was a proper subject for action by the General Assembly." Fabrey, 70 Ohio St.3d at 355. Accordingly, R.C. 2744 is an example of the legislature exercising the power given to it by Section 16, Article I to determine the parameters under which a political subdivision can be sued. Fabrey, 70 Ohio St.3d at 354-355.
 {¶ 25} This Court and numerous other courts have relied on Fabrey andFahnbulleh in ruling that R.C. 2744 does not violate Section 16, ArticleI of the Ohio Constitution. Coolidge v. Riegle, 3rd Dist. No. 5-02-59, 2004-Ohio-347, at ¶ 33-34; Eischen v. Stark County Board ofCommissioners, 5th Dist. No. 2002CA00090, 2002-Ohio-7005, at ¶ 18-20;Terry v. Ottawa County Board of Mental Retardation DevelopmentalDisabilities, 151 Ohio App.3d 234, 2002-Ohio-7299, at ¶ 26. Accordingly, we find no merit in the Thompsons' argument that R.C. 2744 violates Section 16, Article I of the Ohio Constitution.
 Application of R.C. 2744.02 {¶ 26} Next, the Thompsons contend that even if R.C. 2744 is upheld as constitutional, the trial court erred by finding that Antwerp Local was entitled to political subdivision immunity under R.C. 2744.02(A)(1).
 {¶ 27} A reviewing court must engage in a three-tiered analysis to determine whether a political subdivision is entitled to immunity from civil liability pursuant to R.C. 2744. Hubbard v. Canton Cty. Schl. Brd.Of Ed., 97 Ohio St.3d 451, 2002-Ohio-6718, at ¶ 10, citing Cater v.Cleveland, 83 Ohio St.3d 24, 28, 1998-Ohio-421. The first tier in this analysis is to determine whether the entity claiming immunity is a political subdivision and whether the alleged harm occurred in connection with a governmental or propriety function. R.C. 2774.02(A)(1); Hubbard at ¶ 10. The general rule is that political subdivisions are not liable in damages. Id. If it is determined that an entity is a political subdivision entitled to immunity under the first tier in the analysis, then the court must move to the second tier and determine whether any of the exceptions to liability enumerated in R.C. 2744.02(B) apply. Hubbard
at ¶ 12, citing Cater, 83 Ohio St.3d at 28. If any of the R.C. 2744.02(B) exceptions to immunity are found to be applicable, then the political subdivision can reinstate immunity under the third tier by proving that one of the defenses to liability in R.C. 2744.03 applies. Cater,83 Ohio St.3d at 28.
 {¶ 28} Neither party disputes that Antwerp Local is a political subdivision as defined by R.C. 2744.01(F) or that Christopher's death occurred in connection with a governmental function as provided for in 2744.01(C)(2)(c). Therefore, the first tier of the immunity test is satisfied, and Antwerp Local is presumed to be immune from liability unless one of the exceptions listed in R.C. 2744.02(B) applies.
 {¶ 29} In pertinent part, the version of R.C. 2744.02(B) in effect at the time of Christopher's death[1] provided that:
[A] political subdivision is liable in damages in a civil action forinjury, death, or loss to person or property allegedly caused by an actor omission of the political subdivision or of any of its employees inconnection with a governmental or proprietary function, as follows:
* * *
(4) Except as otherwise provided in section 3746.24 of the RevisedCode, political subdivisions are liable for injury, death, or loss toperson or property that is caused by the negligence of their employees andthat occurs within or on the grounds of buildings that are used inconnection with the performance of a governmental function, including,but not limited to, office buildings and courthouses, but not includingjails, places of juvenile detention, workhouses, or any other detentionfacility, as defined in section 2921.01 of the Revised Code.
 (5) In addition to the circumstances described in divisions (B)(1) to(4) of this section, a political subdivision is liable for injury,death, or loss to person or property when liability is expressly imposedupon the political subdivision by a section of the Revised Code,including, but not limited to, sections 2743.02 and 5591.37 of theRevised Code. Liability shall not be construed to exist under anothersection of the Revised Code merely because a responsibility is imposedupon a political subdivision or because of a general authorization that apolitical subdivision may sue and be sued.
 {¶ 30} The Thompsons maintain that the R.C. 2744.02(B)(4) exception to immunity is applicable because Christopher's death was caused by the alleged negligence of Antwerp Local employees that occurred within a building being used in connection with the performance of a governmental function. We agree.
 {¶ 31} In interpreting the version of the statute applicable to the case before us, the Ohio Supreme Court has stated that "R.C. 2744.02(B)(4) applies to all cases where an injury resulting from the negligence of an employee of a political subdivision occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function. The exception is not confined to injury resulting from physical defects or negligent use of grounds or buildings." Hubbard
at the syllabus of the Court.
 {¶ 32} Christopher's death occurred within the Antwerp Local school building. As discussed above, neither side disputes the fact that the building was being used by Antwerp Local in connection with a governmental function. Furthermore, a material issue of fact remains concerning whether the negligence of Antwerp Local's employees, Altimus and Bagley, caused Christopher's death. Under the reasoning in Hubbard,
we find that the R.C. 2744.02(B)(4) exception to political subdivision immunity applies to the case sub judice.
 {¶ 33} The Appellees rely on Cater for the proposition that the R.C.2744.02(B)(4) exception to immunity does not apply to indoor swimming pools. In Cater, the Ohio Supreme Court was asked to consider whether R.C. 2744.02(B)(4) applied to an indoor municipal swimming pool. In finding that R.C. 2744.02(B)(4) did not apply, the Court stated the following:
Although former R.C. 2744.02(B)(4) may be applicable to othergovernmental functions, not specifically listed in the statute, webelieve that it does not apply to an indoor swimming pool. (See, also,Mattox v. Bradner (Mar. 21, 1997), 6th Dist. No. WD-96-038, hich heldthat the exception enumerated in R.C. 2744.02(B)(4) is inapplicable toinjuries sustained in a municipal swimming pool.) Unlike a courthouse oroffice building where government business is conducted, a city recreationcenter houses recreational activities. Furthermore, if we applied formerR.C. 2744.02(B)(4) to an indoor swimming pool, liability could be imposedupon the political subdivision. However, there would be no liability ifthe injury occurred at an outdoor municipal swimming pool, since theinjury did not occur in a building. We do not believe that the GeneralAssembly intended to insulate political subdivisions from liability basedon this distinction. Therefore, we reject appellants' contention thatformer R.C. 2744.02(B)(4) applies to an indoor municipal swimming pool.
 Cater, 83 Ohio St.3d at 31-32.
 {¶ 34} Initially, we note that this Court has serious doubts regarding the continuing validity of Cater in light of the Supreme Court's more recent ruling in Hubbard. In Cater the Supreme Court found that municipal swimming pools were not subject to the R.C. 2744.02(B)(4) exception based on the fact that the governmental function being performed by municipal pools was recreational in nature and not the kind of "government business" being conducted in a courthouse or government office building. Id. at 31-32. The Court made this finding despite having recognized earlier in the same opinion that "the General Assembly has already classified the operation of a municipal swimming pool as a governmental function under R.C. 2744.01(C)(2)(u)." Id at 28. No such distinction has been made by the Court since Cater. In fact, in Hubbard the Court stressed that the only relevant inquiry in such a case is whether "the injuries claimed by plaintiffs were caused by negligence occurring on the grounds of a building used in connection with a government function * * *." Hubbard at ¶ 18. There was no discussion regarding whether the governmental function in the building involved was recreational in nature.
 {¶ 35} Additionally, as noted by Justice Moyer in a concurring opinion in Cater, outdoor pools are located on the grounds of buildings such as shelters, restrooms and storage areas that are being used in the performance of a governmental function. Cater, 83 Ohio St.3d at 35. Therefore, both outdoor and indoor municipal pools would be subject to the R.C. 2744.02(B)(4) exception, and the distinction relied on by the majority in Cater involving outdoor and indoor municipal pools would appear to be invalid.
 {¶ 36} Furthermore, even assuming that the law as stated in Cater is still valid, Antwerp Local fails to convince us that the governmental functions being performed in its school building are recreational in nature. To the contrary, the business of running a school and educating students, even teaching them how to swim, is much more akin to the governmental business conducted in a courthouse or office building than the recreational activities of a municipal swimming pool. Therefore, the ruling in Cater that R.C. 2744.02(B)(4) does not apply to indoor municipal pools is not applicable to the facts of the case before us, and Antwerp Local's immunity has been abrogated by the R.C. 2744.02(B)(4) exception.
 {¶ 37} Having found that the R.C. 2744.02(B)(4) exception applies, the portion of the Thompsons' assignment of error that addresses the (B)(5) exception to immunity has been rendered moot and will not be addressed. Accordingly, we must proceed to the third tier of the political subdivision immunity test and determine whether Antwerp Local's immunity can be reinstated via any of the R.C. 2744.03 defenses to liability.
 {¶ 38} Under R.C. 2744.03, immunity that has been abrogated by a R.C.2744.02(B) exception "can be reinstated if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03
applies." Cater, 83 Ohio St.3d at 28. Antwerp Local claims that the defenses in R.C. 2744.03(A)(3) and (5) apply to the facts of the case before us. Those defenses are as follows:
(3) The political subdivision is immune from liability if the action orfailure to act by the employee involved that gave rise to the claim ofliability was within the discretion of the employee with respect topolicy-making, planning, or enforcement powers by virtue of the duties andresponsibilities of the office or position of the employee.
* * *
(5) The political subdivision is immune from liability if the injury,death, or loss to person or property resulted from the exercise ofjudgment or discretion in determining whether to acquire, or how to use,equipment, supplies, materials, personnel, facilities, and otherresources unless the judgment or discretion was exercised with maliciouspurpose, in bad faith, or in a wanton or reckless manner.
 {¶ 39} The Thompsons' claims against Antwerp Local concerning Bagley's conduct center around the manner in which Bagley operated and maintained the pool. They argue that Bagley's failure to properly operate and maintain the pool resulted in Christopher's death. Antwerp Local contends that Bagley's decisions regarding the maintenance and operation of the pool were discretionary and subject to the above defenses. In response, the Thompsons assert that Antwerp Local's pool is a "public swimming pool" as defined by R.C. 3749.01(G) and is subject to Ohio Adm. Code 3701-31, which regulates the operation and maintenance of public swimming pools. Therefore, the Thompsons contend that the manner in which Bagley was supposed to operate and maintain the pool was not discretionary, but mandated by Ohio Adm. Code 3701-31.
 {¶ 40} Normally, school officials and administrators are given significant discretion in determining how best to supervise students and allocate personnel. Frederick v. Vinton County Bd. of Ed., 4th Dist. No. 03CA579, 2004-Ohio-550, at ¶ 43, citing Marcum v. Talawanda CitySchools (1996), 108 Ohio App.3d 412, 416-417. Thus, R.C. 2744.03(A)(5) can be invoked by schools as a defense to civil liability in such situations. Id.; Spencer at ¶ 32. However, the Thompsons assert that the decisions made by Bagley regarding the maintenance and operation of the pool were regulated by statute and not discretionary in nature.
 {¶ 41} Ohio Adm. Code 3701-31 establishes mandatory rules and regulations that are applicable to the maintenance and operation of public swimming pools. It was enacted pursuant to the legislative directive of R.C. 3749.02. Under R.C. 3749.01(G), a "public swimming pool" is defined as:
any indoor or outdoor structure, chamber, or tank containing a body ofwater for swimming, diving, or bathing that is intended to be usedcollectively for swimming, diving, or bathing and is operated by anyperson whether as the owner, lessee, operator, licensee, orconcessionaire, regardless of whether or not fee is charged for use, butdoes not mean any public bathing area or private residential swimmingpool.
The definition of person in R.C. 3749.01(C) includes the State and any political subdivision thereof. The question for this Court is whether Antwerp Local's pool is a public swimming pool as defined by R.C.3749.01(G). If so, the pool is subject to the mandatory regulations of Ohio Adm. Code 3701-31, and the manner in which Bagley maintained and operated the pool would not be discretionary.
 {¶ 42} Antwerp Local's pool is open to the general public during the summer, but used exclusively by students during the school year. Antwerp Local admits that its pool as operated during summer is a public swimming pool and is subject to the regulations of Ohio Adm. Code 3701-31. However, Antwerp Local claims that because only students are allowed to use the pool during the school year, the pool is actually a "dual use" pool being operated during the summer as a public swimming pool and during the school year as a private pool. Thus, Antwerp Local argues that the pool was not subject to the administrative regulations at the time of Christopher's death because it was being operated as a private pool and not as a public swimming pool. We disagree.
 {¶ 43} The only statute that Antwerp Local cites to as authorizing it to operate a dual use pool is R.C 3313.75, which provides that "[t]he board of education of a city, exempted village, or local school district may authorize the opening of schoolhouses for any lawful purposes." While this statute gives schools the authority to operate a pool on school grounds as a public swimming pool, it does not mention the operation of a pool as dual use. In fact, we were unable to find any statute or regulation authorizing the operation of a licensed public swimming pool as a dual use pool. If the legislature had intended to allow persons to operate licensed public swimming pools as unregulated private pools some of the time it could have provided for dual use pools in the legislation. However, since neither the legislature nor the Department of Health has authorized a situation where a licensed public swimming pool can be utilized without being subject to the administrative regulations, we decline to do so.
 {¶ 44} The record reflects that since 1993 Antwerp Local has been applying for and receiving a license in accordance with R.C. 3749.04 from the Ohio Department of Health that allows it to operate a public swimming pool. The license lists Antwerp Local as the holder of the license and Bagley as the operator of the pool. It is also clear from the record that Antwerp Local complied with Ohio Adm. Code 3701-31 during the summer when the pool was open for use by the general public. Therefore, we find that Antwerp Local's swimming pool was a licensed public swimming pool subject to the administrative regulations of Ohio Adm. Code 3701-31. Furthermore, we find that the administrative regulations for public swimming pools are not discretionary in nature and that Antwerp Local can not claim a defense under R.C. 2744.03(A)(3) or (5) for allegations of negligence based on Bagley's maintenance and operation of the pool.
 {¶ 45} Accordingly, it was error for the trial court to find that Antwerp Local was entitled to political subdivision immunity for Bagley's alleged negligence. In this respect, the trial court's judgment granting Antwerp Local summary judgment is reversed and the cause is remanded for the trial court to determine whether Bagley negligently maintained and operated the pool and, if so, whether such negligence resulted in Christopher's death.
 {¶ 46} Turning to the Thompsons' claim against Altimus, the Thompsons allege that Altimus was negligent in the manner in which he supervised Christopher and responded to Christopher's emergency and that this negligent supervision and response resulted in Christopher's death. Antwerp Local asserts that Altimus' supervision of Christopher and response to his emergency was discretionary in nature and falls within the purview of the same defenses that it claimed applied to Bagley's actions.
 {¶ 47} R.C. 2744.03(A)(3) is not available to Antwerp Local as a defense against the charge that Altimus negligently supervised Christopher. Altimus' supervision of Christopher did not involve any "policy-making, planning, or enforcement powers by virtue of the duties and responsibilities" of his position. R.C. 2744.03(A)(3). However, the defense in R.C. 2744.03(A)(5) is available to Antwerp Local because Altimus' supervision and rescue attempt of Christopher involved discretionary decisions of "how to use, equipment, supplies, materials, personnel, facilities, and other resources * * *." Additionally, the Thompsons have failed to provide any statutory or administrative authority that mandates the manner in which a lifeguard or coach must supervise or rescue children in a swimming pool. Indeed, Ohio Adm. Code 3701-31 speaks only to the duties of the licensee to maintain and operate the pool, not to the specific duties of a supervising lifeguard or coach. Accordingly, we find that Altimus' decisions on how to best supervise Christopher and react to his emergency were discretionary in nature. See, Schirger v. City of Brook Park (Oct. 23, 1997), 8th Dist. No. 71739 (holding that a rescue squad's determination of how to respond to an emergency was within the R.C. 2744.03(A)(5) defense to immunity). Therefore, Antwerp Local can raise the defense in R.C. 2744.03(A)(5) with regard to the Thompsons' claims that arise from Altimus' alleged negligence.
 {¶ 48} Nevertheless, this does not end our inquiry into R.C.2744.03(A)(5). Immunity will be reinstated under this defense when the loss is based on a discretionary decision that relates to the use of "equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C.2744.03(A)(5) (Emphasis added). Therefore, we must construe the evidence in a light most favorable to the Thompsons and determine whether reasonable minds could find that there is a material issue of fact that Altimus' actions rose to the level of either malice, bad faith, wantonness, or recklessness.
 {¶ 49} In the context of political subdivision immunity, malicious purpose has been defined as the willful and intentional design to do injury. Piro v. Franklin Township (1995), 102 Ohio App.3d 130, 139, citing Jackson v. Butler Cty. Bd. of Cty. Commrs. (1991),76 Ohio App.3d 448, 453. Bad faith "connotes a `dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." Id., quoting Slater v. Motorists Mut. Ins. Co. (1962), 174 Ohio St. 148, paragraph two of the syllabus. Wanton misconduct is the failure to exercise any care whatsoever and establishes a disposition to perversity on the part of the tortfeasor. Fabrey v. McDonald Village Police Dept.,70 Ohio St.3d at 356. "Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury." Id. Finally, reckless "conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that this risk is greater than that necessary to make the conduct negligent." Piro, 102 Ohio App.3d at 139, citing Thompson v.McNeill (1990), 53 Ohio St.3d 102, 104-105, citing 2 Restatement of the Law 2d, Torts (1965) 587, Section 500.
 {¶ 50} After reviewing the entire record, we find there is no evidence that Altimus acted with a malicious purpose, in bad faith, or in a wanton manner. Each of these requires some sort of purposeful or conscious wrongdoing on the part of the tortfeasor. There simply is no such evidence in the record.
 {¶ 51} However, we do find that a material issue of fact remains concerning whether Altimus' supervision of Christopher and response to his emergency were reckless. The record shows that at least one aquatic safety expert believes Altimus failed to properly provide for Christopher's supervision and safety. Whether such actions rises to the level of recklessness is normally a question to be determined by the trier of fact. Edinger v. Board of Allen County Com'rs (April 26, 1995), 3rd Dist. No. 1-94-84; see, also, Summers v. Slivinsky,141 Ohio App.3d 82, 92, 2001-Ohio-3169. Therefore, we find that a material issue of fact remains concerning whether Altimus recklessly provided for Christopher's supervision and safety, and it was error for the trial court to grant Antwerp Local summary judgment on the Thompsons' claims that were based upon Altimus' allegedly reckless actions. Accordingly, the judgment of the trial court is reversed and the cause is remanded for the trier of fact to determine whether Altimus' actions rose to such a level as to eradicate Antwerp Local's defense under R.C.2744.03(A)(5).
 {¶ 52} In sum, Antwerp Local's political subdivision immunity is subject to the exception in R.C. 2744.02(B)(4) because the alleged negligence occurred within a building being used in connection with a governmental function. Furthermore, Bagley was required to operate and maintain the pool as mandated by Ohio Adm. Code 3701-31. As such, the discretionary defenses in R.C. 2744.03(A)(3) and (5) are not available to Antwerp Local with regard to the Thompsons' claims stemming from Bagley's allegedly negligent operation and maintenance of the pool. Finally, while the manner of Altimus' supervision and response to Christopher's emergency was discretionary, a material issue of fact remains concerning whether he did so in a reckless manner. Accordingly, the Thompsons' first assignment of error is sustained.
 Assignment of Error II {¶ 53} In their second assignment of error, the Thompsons contend that the trial court erred by finding that Altimus and Bagley were personally immune from liability under R.C. 2744.03(A)(6).
 {¶ 54} An employee of a political subdivision is immune from individual liability unless one of the following applies:
(a) The employee's acts or omissions were manifestly outside the scopeof the employee's employment or official responsibilities;
 (b) The employee's acts or omissions were with malicious purpose, inbad faith, or in a wanton or reckless manner;
 (c) Liability is expressly imposed upon the employee by a section ofthe Revised Code.[2]
 {¶ 55} None of the Thompsons' allegations against either Altimus or Bagley involve actions that were outside of the scope of their employment or official responsibilities. Therefore, the exception to liability in R.C. 2744.0.3(A)(6)(a) does not apply.
 {¶ 56} Furthermore, no section of the Revised Code expressly imposes liability upon either Altimus or Bagley. The Thompsons claim that R.C.3749.99, which criminalizes violations of R.C. 3749.09(A), expressly imposes liability on both Altimus and Bagley. R.C. 3749.09(A) states that "[n]o person shall violate sections 3749.01 to 3749.09 of the Revised Code or any rule adopted thereunder." Thus, the Thompsons maintain that criminal liability is expressly imposed upon Altimus and Bagley for their alleged violations of Ohio Adm. Code 3701-31. However, while the definition of "person" in R.C. 3749.01(C) does include both political subdivisions and individuals in general, it does not include either employees of a political subdivision or, more specifically, employees of a school district. Unlike R.C. 2151.421, which the Ohio Supreme Court found in Campbell v. Burton, 92 Ohio St.3d 336, 340-341, 2001-Ohio-206, to expressly impose liability upon school districts and school district employees, R.C. 3749.01(C) does not specifically reference school teachers, school employees, or school authorities. Therefore, the prohibition in R.C. 3749.09(A) against any "person" violating a rule adopted pursuant to R.C. 3749 does not expressly impose liability upon either Altimus or Bagley, and the exception to liability in R.C.2744.03(A)(6)(c) is not applicable to the facts before this Court. See,Ratcliff v. Darby, 4th Dist. No. 02CA2832, 2002-Ohio-6626, at ¶ 19-21 (holding that a statute imposing general criminal sanctions on everyone rather than a group of individuals (e.g. teachers or school administrators) is not a statute that expressly imposes liability on a political subdivision).
 {¶ 57} Turning to R.C. 2744.03(A)(6)(b), we defer to our earlier analysis concerning the definition of malice, bad faith, wantonness, and recklessness. As stated earlier, there is no evidence that Altimus' actions were done with malice, bad faith or in a wanton manner. However, there is some evidence concerning whether his supervision of Christopher was reckless, and the matter should be determined by the trier of fact upon remand. It is also clear that the Thompsons are unable to produce any evidence that Bagley acted with malice, bad faith or in a wanton manner, but, like Christopher, there is some evidence in the record that his maintenance and operation of the pool may have been done in a reckless manner. Therefore, a material issue of fact remains that should be determined by the trier of fact on remand.
 {¶ 58} Accordingly, we find that neither R.C. 2744.03(A)(6)(a) or (c) apply to the facts of the case sub judice. However, material issues of fact remain concerning whether Bagley and Altimus' actions were reckless in nature and, thus, whether they are entitled to personal immunity under R.C. 2744.03(A)(6). Therefore, the Thompsons' second assignment of error is sustained as well.
 {¶ 59} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
 Bryant and Shaw, JJ., concur.
[1] An amended version of R.C. 2744.02(B)(4) went into effect on April 9, 2003. The current version now excludes from liability only negligence that "is due to physical defects within or on the grounds of" a building being used by a political subdivision for a governmental function. Furthermore, the amendment changed the wording of R.C. 2744.02(B)(5), which now states that only the imposition of civil liability by a section of the Revised Code invokes an exception to liability. These changes were not a part of the statutory language at the time of Christopher's death and will not be considered in this opinion. "We are bound to apply the words of the law in effect at the time the alleged negligent acts occurred." Hubbard at ¶ 17.
[2] Like R.C. 2744.02(B)(4) and (5), 2744.03(A)(6)(c) was revised on April 9, 2003. The revised version now abrogates an individual's immunity only when civil liability is expressly imposed by another section of the Revised Code. However, as stated earlier, we must apply the words of the law as it was written at the time the alleged negligence occurred.Hubbard at ¶ 17.