[Cite as *Hawsman v. Cuyahoga Falls*, 2011-Ohio-3795.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

MICHAEL L. HAWSMAN, minor, et al.

    Appellants

    v.

CITY OF CUYAHOGA FALLS, et al.

    Appellees

C.A. No.     25582

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2009 07 5156

DECISION AND JOURNAL ENTRY

Dated: August 3, 2011

MOORE, Judge.

{¶1} Appellants, Michael Hawsman, a minor, and his parents, appeal from the judgment of the Summit County Court of Common Pleas granting summary judgment against them on the basis of political subdivision immunity. This Court reverses.

I.

{¶2} The relevant facts, for purposes of context, are as follows. On May 12, 2006, Michael Hawsman visited the Cuyahoga Falls Natatorium and Wellness Center. He injured his knee while using the pool and diving board. The City of Cuyahoga Falls maintains and operates the Natatorium. On July 10, 2009, Hawsman and his parents filed suit against the City and five unidentified defendants alleging that the City negligently maintained the diving board. After filing a certification for leave to plead, the City filed its answer on September 9, 2009.

{¶3} On May 26, 2010, the City filed a motion for summary judgment claiming that it was immune from suit. Specifically, it contended that the exception to political subdivision

immunity found in R.C. 2744.02(B)(4), as interpreted in *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, did not apply to indoor swimming pools. The Hawsmans filed a brief in opposition to the motion and the City filed a reply brief. On August 17, 2010, the trial court granted summary judgment in favor of the City.

**{¶4}** The Hawsmans timely filed a notice of appeal and raise one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

"THE TRIAL COURT ERRED IN FINDING THAT THE EXCEPTION TO POLITICAL SUBDIVISION IMMUNITY PROVIDED IN OHIO REVISED CODE §2744.0[2](B)(4) DOES NOT APPLY TO THE INDOOR SWIMMING POOL OPERATED BY [THE CITY]."

**{¶5}** In their first assignment of error, the Hawsmans contend that the trial court erred in granting summary judgment to the City because the exception to political subdivision immunity found in R.C. 2744.02(B)(4) does not apply to the City's indoor swimming pool. We agree.

**{¶6}** This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.* (1983), 13 Ohio App.3d 7, 12.

**{¶7}** Pursuant to Civ.R. 56(C), summary judgment is proper if:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for

summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327.

{¶8}   The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735.

{¶9}   We begin by acknowledging that fewer than two years ago in *Hopper v. Elyria*, 9th Dist. No. 08CA009421, 2009-Ohio-2517, this Court decided a nearly identical issue in reliance on the lead opinion from *Cater v. Cleveland*, supra. The vitality of the lead opinion in *Cater* has been subjected to increasing skepticism in recent years, particularly with respect to its treatment of municipal swimming pools. In *Cater*, a twelve-year-old boy lost consciousness and nearly drowned in a city-owned indoor pool. *Cater*, 83 Ohio St.3d at 24. He developed pneumonia and was declared brain-dead four days later. Id. Cater's family sued. Id. At the close of the family's case, the City of Cleveland moved for a directed verdict on the basis of immunity under R.C. Chapter 2744. Id. at 27. The trial court granted the motion and the court of appeals affirmed. Id. We begin our analysis of this case with a brief review of the relevant portions of R.C. 2744.02.

A.    Chapter 2744 Analytical Structure

{¶10}  *Cater* set forth an oft-cited explanation of the appropriate analysis of cases falling under R.C. 2744.02.  *Cater* observed that "[t]he Political Subdivision Tort Liability Act, as codified in R.C. Chapter 2744, sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability."  Id. at 28.  The first tier is the premise under R.C. 2744.02(A)(1) that: "[e]xcept as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."  (Emphasis omitted.)  Id. at 28.

{¶11}  The second tier involves the five exceptions set forth in R.C. 2744.02(B), any of which may abrogate the general immunity delineated in R.C. 2744.02(A)(1).  Id.  Lastly, under the third tier, "immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03 applies."  Id.  The Supreme Court of Ohio has repeatedly endorsed this approach.  See, e.g., *Hubbard v. Canton City School Bd. of Ed.*, 97 Ohio St.3d 451, 2002-Ohio-6718.

B.    Applicability of R.C. 2744.02(B)(4) to Municipal Pools

{¶12}  In this case, the parties agree that maintenance of the pool and diving board is a governmental function.  Thus, the single issue for our determination is whether the exception to immunity set forth in R.C. 2744.02(B)(4) applies.  The exception to immunity found in R.C. 2744.02(B)(4) provides that "political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in

connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility * * *."

{¶13} In the court below, the City based its motion for summary judgment upon the Supreme Court's decision in *Cater*, which interpreted the applicability of R.C. 2744.02(B)(4) to municipal pools, and this Court's decision in *Hopper*, which followed the lead opinion. Justice Sweeney, writing only for himself in the lead opinion, said that operation of an indoor municipal swimming pool was subject to the immunity exception found in former R.C. 2744.02(B)(3), which addressed nuisance conditions, but was not subject to the exception found in former R.C. 2744.02(B)(4).[1] *Cater*, 83 Ohio St.3d at 30-32. The opinion examined the statutory language from R.C 2744.02(B)(4) including "within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails * * *." The lead opinion then distinguished recreational locations from business activity locations, saying that "[u]nlike a courthouse or office building where government business is conducted, a city recreation center houses recreational activities." Id. at 31. The opinion continued in dicta that "if we applied former R.C. 2744.02(B)(4) to an indoor swimming pool, liability could be imposed upon the political subdivision. However, there would be no liability if the injury occurred at an outdoor municipal swimming pool, since the injury did not occur in a building." Id.

{¶14} Chief Justice Moyer concurred in the syllabus and judgment, expressing his belief that R.C. 2744.02(B)(4) clearly applies to indoor and outdoor pools. Id. at 35. The Chief Justice's concurrence reasoned that indoor pools are naturally found within buildings and

outdoor pools "invariably are located on land that includes buildings[.]" Id. Two justices concurred in this opinion and the syllabus, creating a plurality opinion. Id. at 34. The syllabus is broad and states that municipal swimming pools are subject to the exceptions to immunity set forth in R.C. 2744.02(B). Id. at the syllabus. The final two justices concurred in judgment only. Id. at 34. Overall, four justices concurred in the broad syllabus statement that the operation of municipal swimming pools is subject to the immunity exceptions found in R.C. 2744.02(B), one justice in the lead opinion agreed that R.C. 2744.02(B)(4) did not provide an exception to immunity in the case of municipal pools and distinguished between recreational and governmental business buildings, two justices concurred in judgment only, and three justices opined that R.C. 2744.02(B)(4) should apply to indoor and outdoor municipal pools. Against this background, the holding of Justice Sweeney's lead opinion in *Cater* has limited precedential effect.

{¶15} Further, the Supreme Court has since implicitly abandoned a distinction between places of business and places of recreation in interpreting the applicability of R.C. 2744.02(B)(4). In *Moore v. Lorain Metro. Hous. Auth.*, 121 Ohio St.3d 455, 2009-Ohio-1250, two children died as a result of a fire in an apartment owned by the housing authority. Id. at ¶2. The lawsuit claimed that a housing authority employee removed the lone working smoke detector in the apartment. Id. at ¶3. The housing authority argued that R.C. 2744.02(B)(4) only applied to buildings similar to offices and courthouses. Id. at ¶23. The majority analyzed the phrase "including, but not limited to" and observed that it "denotes a nonexclusive list of buildings to which the exception may apply." Id. at ¶24. On appeal, the Supreme Court seized on the phrase "buildings that are used in connection with the performance of a governmental

---

[1] The version of R.C. 2744.02(B)(4) in effect at the time did not include the clause "and

function" and concluded that units of public housing are used in connection with the performance of a governmental function. Id. For that reason, the Court held that R.C. 2744.02(B)(4) created an exception to immunity in that case. Id. Although the Court did not explicitly abandon the governmental-business-versus-recreational-use distinction, a housing authority apartment is not a place where the public generally appears and government business takes place.

{¶16} In recent years, the rationale of *Cater's* lead opinion has come under increasing criticism from several appellate districts. In 2005, the Third District Court of Appeals in *Thompson v. Bagley*, 3d Dist. No. 11-04-12, 2005-Ohio-1921, questioned the continuing validity of *Cater*. The *Bagley* court observed that, like in *Moore*, the Supreme Court in *Hubbard* considered only the plain language of R.C. 2744.02(B)(4) and made no mention of a distinction between recreational and governmental uses. Id. at ¶34. The *Bagley* court, however, distinguished the case from *Cater* on the basis that Thompson was a fourth-grade student involved in a school swim class at the time of his death. *Bagley* at ¶36. The court noted that even teaching students how to swim "is much more akin to the governmental business conducted in a courthouse or office building than the recreational activities of a municipal swimming pool." Id. On that basis, the Third District reversed the trial court's grant of summary judgment in favor of the school district. Id. at ¶59.

{¶17} The Sixth District Court of Appeals addressed political subdivision immunity related to a city-operated swimming pool in *O'Connor v. City of Fremont*, 6th Dist. No. S-10-008, 2010-Ohio-4159. The majority affirmed the grant of summary judgment in favor of the city on the basis of political subdivision immunity. Id. at ¶1. The majority relied upon *Cater's* lead

is due to physical defects within or on the grounds of."

opinion and *Hopper*, specifically repeating that *Cater* constitutes binding precedent. Id. at ¶12. The majority also relied on *Hopper's* determination that *Bagley* was distinguishable on the basis that a school is a place of governmental business as opposed to recreational activity, quoting that "'the analysis by the *Thompson* court does not implicate the reasoning in *Cater*.'" Id. at ¶13. Judge Cosme, however, wrote a comprehensive dissent. First, the dissent observed that plurality opinions are not binding authority and cited, among others, *Hedrick v. Motorists Mut. Ins. Co.* (1986), 22 Ohio St.3d 42, 44. Id. at ¶17, 22. The dissent further observed that *Cater's* lead opinion did not obtain even plurality status because the lone concurring judge did not join on the issue of R.C. 2744.02(B)(4)'s applicability. Id. at ¶22. The dissent also criticized *Hopper's* reliance on *Cater's* governmental-business-versus-recreational-use distinction in light of *Moore's* implicit abandonment of this approach. Id. at ¶30. In light of the inherent conflict between *Cater's* lead opinion and *Moore*, the dissent would have relied upon the more recent precedent and denied the city's summary judgment motion. Id. at ¶32.

{¶18} The Fourth District Court of Appeals faced an analogous situation in *Mathews v. City of Waverly*, 4th Dist. No. 08CA787, 2010-Ohio-347. Although a municipal pool was not involved, the two-judge majority affirmed a trial court's order denying summary judgment to the city on the basis that the exception in R.C. 2744.02(B)(4) applied to the negligent maintenance of public parks. Id. at ¶36. The third judge dissented without opinion. In that case, "a tree limb fell on Ms. Mathews while she stood in the parking lot of Canal Park, which the City of Waverly owns and operates." Id. at ¶3. The city moved for summary judgment on the basis that R.C. 2744.02(B)(4) does not apply as an exception to immunity because Mathews could not "show that any building within the park was used in connection with the performance of a government function." Id. at ¶4. The *Mathews* court acknowledged the tension between *Hopper* and *Bagley*.

Id. at ¶33-34. The court also observed the tension between *Cater* and *Moore*. Id. at ¶32. The majority criticized *Cater* because it "ignore[d] principles of statutory interpretation." Id. at ¶30. In interpreting R.C. 2744.02(B)(4) the court observed that "[t]he plain meaning of a 'governmental function' includes the operation of a swimming pool. Inserting this latter definition into R.C. 2744.02(B)(4) would mean that the statute applies to 'buildings used in connection with the performance of the operation of a swimming pool.'" Id. The court further observed that *Cater's* lead opinion never explained how it could "avoid a seemingly plain application of the statute to conclude that that the General Assembly did not intend to include buildings that house a municipal swimming pool from the reach of R.C. 2744.02(B)(4)." Id. If the General Assembly intended a distinction between governmental business and recreational use it could have used language to that effect. Id. The Fourth District determined that *Moore* was more recent and its approach to R.C. 2744.02(B)(4) was more consistent with the plain language of the statute. Id. at ¶35. The court held that "[a]lthough the city does not literally 'maintain' or 'operate' the park from the shelter houses or the roofed pagodas, those buildings are used in connection with the performance of the operation of the park." Id. at ¶36. Consequently, Mathews was not barred by political subdivision immunity from pursuing a claim because the plain language of the statute and the Supreme Court's straightforward interpretation of that language in *Moore* were held not to support a distinction between buildings used for recreational purposes and those used for government business. Id.

{¶19} *Hopper* is presently binding precedent in this district. Hopper's son drowned in a city-owned pool. *Hopper*, at ¶6. The case was disposed of on a motion to dismiss pursuant to Civ.R. 12(B)(6), but the complaint alleged that the city failed to post proper warning signs and failed to secure the premises against unauthorized entry. Id. The trial court declined to dismiss

the suit and the city appealed. Hopper contended that *Hubbard* calls into question the reasoning behind *Cater*. Id. at ¶15. This Court observed that *Hubbard* cited *Cater* as authority for the three-tiered analysis used in determining immunity and that *Hubbard* did not attempt to discuss or distinguish its reasoning from *Cater*. Id. This Court also rejected the conclusion reached in *Bagley*, reasoning that *Bagley* involved an office building, a school, in which a governmental function is performed, the education of children. Id. at ¶17. In *Hopper* this Court reaffirmed the authority of *Cater* and reversed the trial court's denial of the city's motion to dismiss on the basis of immunity. Id. at ¶18. Upon considered review, the criticisms of *Cater* by the various courts of appeal, however, are well-reasoned and compelling.

C.    *Hopper* Overruled

{¶20}  Because *Hopper* relied on the lead opinion in *Cater*, an opinion not joined by any other justice, as binding authority, it was wrongly decided. *Hopper* is overruled. In so holding, we rely on the authority of *Moore* and the applicable statutory language of R.C. 2744.02(B)(4). *Moore* implicitly discarded the distinction between recreational use and governmental business. *Moore* at ¶24. *Moore* instead focused on the clear language of R.C. 2744.02(B)(4): "buildings that are used in connection with the performance of a governmental function." Id.  *Moore* observed that the additional language of R.C. 2744.02(B)(4) "including, but not limited to," office buildings and courthouses "denotes a nonexclusive list of buildings to which the exception may apply." Id. It held that injuries occurring within or on the grounds of these buildings, in that case public housing authority apartments, are not subject to immunity. Id. R.C. 2744.01(C)(2)(u)(iv) defines the "* * * repair, maintenance, and operation of * * * [a] swimming pool, * * * water park, * * * wave pool, water slide, or other type of aquatic facility[,]" as a governmental function. The facility in which Hawsman was injured, the Cuyahoga Falls

Natatorium, contains a swimming pool that the City repairs, maintains, and operates, and is, therefore, a building used in connection with the performance of a governmental function. Accordingly, the exception to immunity found in R.C. 2744.02(B)(4) applies and the City is not immune from suit by the Hawsmans. Although the trial court could not have predicted that we would overrule *Hopper*, its judgment must be reversed.

{**¶21**} The Hawsmans' single assignment of error is sustained.

III.

{**¶22**} The Hawsmans' single assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

                                        _____
                                        CARLA MOORE
                                        FOR THE COURT


BELFANCE, P. J.
DICKINSON, J.
CONCUR

APPEARANCES:

PETER D. TRASKA and WILLIAM J. PRICE, Attorneys at Law, for Appellant.

PAUL A. JANIS, Law Director, and HOPE L. JONES, Deputy Law Director, for Appellee.