[Cite as *Hawsman v. Cuyahoga Falls*, 2014-Ohio-4325.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

MICHAEL L. HAWSMAN, et al.          C.A. No.      27221

    Appellants

    v.                                                      APPEAL FROM JUDGMENT
                                                             ENTERED IN THE
CITY OF CUYAHOGA FALLS, et al.          COURT OF COMMON PLEAS
                                                             COUNTY OF SUMMIT, OHIO
    Appellee                                     CASE No.     CV 2009-07-5156

DECISION AND JOURNAL ENTRY

Dated: September 30, 2014

BELFANCE, Presiding Judge.

{¶1}    Plaintiffs-Appellants Michael L. Hawsman and his parents (collectively "the Hawsmans") appeal from the judgment of the Summit County Court of Common Pleas granting summary judgment in favor of Defendant-Appellee City of Cuyahoga Falls.  For the reasons set forth below, we reverse.

I.

{¶2}    This Court recounted some of the important facts in a prior appeal:

On May 12, 2006, Michael Hawsman[, who was at the time, a minor,] visited the Cuyahoga Falls Natatorium and Wellness Center. He injured his knee while using the pool and diving board.  The City of Cuyahoga Falls maintains and operates the Natatorium.  On July 10, 2009, Hawsman and his parents filed suit against the City and five unidentified defendants alleging that the City negligently maintained the diving board.  After filing a certification for leave to plead, the City filed its answer on September 9, 2009.

On May 26, 2010, the City filed a motion for summary judgment claiming that it was immune from suit.  Specifically, it contended that the exception to political subdivision immunity found in R.C. 2744.02(B)(4), as interpreted in *Cater v. Cleveland*[], 83 Ohio St.3d 24[, (1998)], did not apply to indoor swimming pools. The Hawsmans filed a brief in opposition to the motion and the City filed a reply

brief. On August 17, 2010, the trial court granted summary judgment in favor of the City.

*Hawsman v. Cuyahoga Falls,* 9th Dist. Summit No. 25582, 2011-Ohio-3795, ¶ 2-3.

{¶3} The Hawsmans appealed, and this Court reversed the judgment, and, in the process, overruled *Hopper v. Elyria,* 9th Dist. Lorain No. 08CA009421, 2009-Ohio-2517, concluding that "[t]he facility in which Hawsman was injured, the Cuyahoga Falls Natatorium, contains a swimming pool that the City repairs, maintains, and operates, and is, therefore, a building used in connection with the performance of a governmental function. Accordingly, the exception to immunity found in R.C. 2744.02(B)(4) applies and the City is not immune from suit by the Hawsmans." *Hawsman.* at ¶ 20.

{¶4} The City appealed and the Supreme Court affirmed our decision. *M.H. v. Cuyahoga Falls,* 134 Ohio St.3d 65, 2012-Ohio-5336, ¶ 1. The Supreme Court concluded that "the city has not shown on its motion for summary judgment that it is entitled to immunity under R.C. 2744.02(A)(1), because under R.C. 2744.02(B)(4), a political subdivision can be held liable for injury caused by the negligence of its employees that occurred within the grounds of buildings used in performing a governmental function." *Id.* It stated that "the exception to immunity contained in R.C. 2744.02(B)(4) is applicable[.]" *Id.* at ¶ 12.

{¶5} Upon remand, following a status conference, the trial court ordered the City to file any motion for summary judgment involving the second tier of immunity by January 25, 2013. Thereafter, on January 24, 2013, the City filed a motion for the trial court to continue its summary judgment analysis which requested that the court apply the facts of the case to the R.C. 2744.02(B)(4) exception. The Hawsmans responded in opposition asserting that the City had waived any additional summary judgment arguments by not raising them in the initial motion. On April 4, 2013, the trial court issued an order authorizing the parties to again file for summary

judgment. Additionally, the City filed a motion to amend its answer and add defenses, to which the Hawsmans objected. The trial court subsequently denied that motion.

{¶6} Thereafter, the City filed a motion for summary judgment asserting that there was no evidence that Michael Hawsman's injury was due to a physical defect, and, if there was a defect, the City had no knowledge of it. Additionally, the City asserted that the diving board was an open and obvious danger. Finally, the City maintained that, even if the diving board was not an open and obvious condition, the City was entitled to summary judgment because it did not create a hazardous condition and it did not have knowledge of any hazardous condition.

{¶7} The Hawsmans filed a motion in opposition and a motion to strike the report of the City's expert. The Hawsmans argued that the injury was due to the negligence of City employees and was due to a physical defect in the diving board. Additionally, they asserted that the condition of the surface of the diving board was not open and obvious and that the City created the hazardous condition at issue by its failure to follow the maintenance instructions for the diving board. In granting summary judgment to the City, the trial court stated that it was not relying on the testimony of the City's expert and that the motion to strike the City's expert's report was still pending. The trial court concluded that, because the third tier of immunity was not addressed by the parties, the City was not immune and proceeded to address the matter as an ordinary negligence case. The trial court concluded that the diving board was an open and obvious condition and the City owed Michael Hawsman no duty.

{¶8} The Hawsmans have appealed, raising a single assignment of error. Additionally, the City has raised two assignments of error for our consideration. The City notes that we need only address their assignments of error should we reverse the grant of summary judgment in its favor. Accordingly, we examine the Hawsmans' assignment of error first.

II.

{¶9} In reviewing a trial court's ruling on a motion for summary judgment, "[w]e apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party." *Garner v. Robart*, 9th Dist. Summit No. 25427, 2011-Ohio-1519, ¶ 8. Pursuant to Civ.R. 56(C), summary judgment is appropriate when:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a summary judgment motion, the movant bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 293, quoting Civ.R. 56(E).

THE HAWSMANS' ASSIGNMENT OF ERROR

> THE TRIAL COURT ERRED IN GRANTING CITY'S MOTION FOR SUMMARY JUDGMENT FINDING THAT THE DEFECTIVE CONDITION OF THE DIVING BOARD WAS OPEN AND OBVIOUS THEREBY RELIEVING D[EF]ENDANT OF A DUTY TO WARN.

{¶10} The Hawsmans assert in their sole assignment of error that the trial court erred in granting summary judgment to the City. Specifically, they assert that (1) the City waived the argument that the diving board was an open and obvious hazard because it was an affirmative defense that it was required to include in its answer; (2) the open and obvious doctrine was not

available to the City as a defense because the City's duty was determined solely by statute; and (3) the condition of the surface of the diving board was not open and obvious.

{¶11} We note that there is nothing in the record that indicates that the Hawsmans ever specifically challenged the City's use of the open and obvious doctrine in the trial court. While the Hawsmans did generally assert that the City could not file for summary judgment on any basis not previously articulated because the City had already filed for summary judgment previously, the Hawsmans have not argued on appeal that the trial court erred in allowing the City to file for summary judgment at all. *See* App.R. 16(A)(7). In the trial court, the Hawsmans did not assert that the City's use of the open and obvious doctrine was waived because it is an affirmative defense that must be included in an answer, nor did the Hawsmans argue that the City could not avail itself of the open and obvious doctrine because its duty was determined by statute not the common law. Because the Hawsmans did not make these arguments below and because they have not argued or demonstrated plain error, we decline to address them on appeal. *Tarquinio v. Equity Trust Co.,* 9th Dist. Lorain No. 06CA008913, 2007-Ohio-3305, ¶ 19 ("An issue that could have been raised in the trial court, but was not, cannot be considered for the first time on appeal * * *."); *see also Hignett v. Schwarz,* 9th Dist. Lorain No. 10CA009762, 2011-Ohio-3252, ¶ 22.

{¶12} Accordingly, we turn to examining whether the City was entitled to summary judgment on the basis that the diving board was an open and obvious hazard. In their complaint, the Hawsmans essentially alleged that the negligent maintenance of the diving board caused a hazard that led to Michael Hawsman's injury. The Hawsmans were not alleging that the natural state of the diving board caused Michael Hawsman's injuries. Accordingly, it is troubling to this

Court that, the trial court, in concluding summary judgment was appropriate, relied on cases that did not involve defective or unnaturally hazardous surfaces.

{¶13} "'To prevail in a negligence action, the plaintiff must show (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately resulting from the breach.'" *Hackett v. TJ Maxx*, 9th Dist. Summit No. 24978, 2010-Ohio-5824, ¶ 12, quoting *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, ¶ 21. It is well-established that an owner or occupier of land owes a duty to business invitees to exercise ordinary care in maintaining the premises in a reasonably safe condition, to warn of latent or hidden dangers, and to refrain from injuring invitees by negligent activities conducted on the premises. *Perry v. Eastgreen Realty Co.*, 53 Ohio St.2d 51, 52, (1978); *Jackson v. Kings Island*, 58 Ohio St.2d 357, 359, (1979) ("The owner or occupier of premises is not an insurer of the safety of his invitees, but he does owe a duty to exercise ordinary or reasonable care for their protection.").

{¶14} However, "a premises-owner owes no duty to persons entering those premises regarding dangers that are open and obvious." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 5. "The rationale underlying this doctrine is 'that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.'" *Id.*, quoting *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644 (1992). "When applicable, * * * the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." *Armstrong* at ¶ 5.

{¶15} "[T]his Court analyzes the totality of the circumstances to determine if the danger is open and obvious" as a matter of law. *Neura v. Goodwill*, 9th Dist. Medina No. 11CA0052-M, 2012-Ohio-2351, ¶ 10. Thus, "the issue before us is whether, considering the totality of the

circumstances, a genuine issue of material fact exists regarding whether a reasonable person would have discovered the [hazard,] i.e. whether that hazard was open and obvious." *Marock v. Barberton Liedertafel*, 9th Dist. Summit No. 23111, 2006-Ohio-5423, ¶ 14. "Not surprisingly, whether a particular danger is open and obvious depends heavily on the particular facts of the case." *Hissong v. Miller*, 186 Ohio App.3d 345, 2010-Ohio-961, ¶ 10 (2d Dist.).

> **{¶16}** We note that the Supreme Court of Ohio has already concluded that
>
> Cuyahoga Falls is a political subdivision and therefore is able to assert immunity. R.C. 2744.02(A)(1). It is uncontroverted that by maintaining and operating the city of Cuyahoga Falls' natatorium, Cuyahoga Falls was performing a governmental function. Thus, Cuyahoga Falls would be immune from liability unless an exception to immunity applies.

*M.H.,* 134 Ohio St.3d 65, 2012-Ohio-5336, at ¶ 7. Moreover this Court and the Supreme Court have concluded that the exception to immunity in R.C. 2744.02(B)(4) is applicable. *See id.* at ¶ 12; *Hawsman,* 2011-Ohio-3795, at ¶ 20. Further, the trial court's summary judgment entry has not changed that. Accordingly, the City's liability is limited to situations described in R.C. 2744.02(B)(4). *See, e.g., Sampson v. Cuyahoga Metro. Hous. Auth.,* 131 Ohio St.3d 418, 2012-Ohio-570, ¶ 8 (The Political Subdivision Tort Liability act "sets forth the general rule that political subdivisions are not liable for damages in civil actions for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision in connection with a governmental or proprietary function. R.C. 2744.02(A)(1). The act also contains exceptions to a political subdivision's immunity, as well as certain defenses to those exceptions.").

> **{¶17}** R.C. 2744.02(B)(4) provides,
>
> Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings

that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses * * *.

{¶18} Based on the allegations of the complaint, and when considering the limited potential liability of the City, it is clear to this Court that the Hawsmans were not alleging that the natural, non-defective state of the diving board caused Michael Hawsman's injury; instead, the Hawsmans were asserting that the failure of the staff of the Natatorium to follow the daily inspection and maintenance instructions of the manufacturer caused the surface of the board to become defective and that that defect caused his injury. The City's argument at summary judgment was that there was no proof that Michael Hawsman's injury was caused by either employee negligence or by a defect in the board. It further asserted, based on the premise that there was no defect in the board, that the diving board itself in its natural, non-defective state presented an open and obvious hazard.

{¶19} The trial court in its entry concluded that there remained disputes of fact as to whether there was employee negligence and as to whether there was a physical defect in the diving board. Additionally, the trial court found there were questions of fact with respect to whether the City created the hazard. Having concluded that, the trial court then went on to grant summary judgment to the City because "a slippery diving board is an open and obvious hazard." The problem with this conclusion is that the Hawsmans were not asserting that the normal condition of the diving board caused Michael Hawsman's injury. The trial court's conclusion seems to ignore the issues of fact it found previously concerning whether there was defect in the board (which would cause *excessive* or unnatural slipperiness) created by employee negligence. If there was employee negligence that led to a physical defect in the diving board that caused Michael Hawsman's injury, it would be irrelevant whether the diving board in a non-defective state presented an open and obvious hazard, as the City's liability attaches only if the injury was

caused by employee negligence and a physical defect. *See* R.C. 2744.02(A)(1), (B)(4). If the Hawsmans could not prove that Michael Hawsman's injury was "caused by the negligence of [the City's] employees" and was "due to physical defects[,]" *see* R.C. 2744.02(B)(4), the City would not be liable. In other words, if the diving board was in a non-defective state at the time of Michael Hawsman's injury, the City would not be liable, and it would not matter that the non-defective board presented an open and obvious hazard. *See* R.C. 2744.02(A)(1), (B)(4). The City did not assert that any physical defect in the diving board was an open and obvious hazard. Accordingly, given the trial court's other findings and conclusions concerning the existence of genuine issues of material facts, combined with the Hawsmans' allegations, a finding that the diving board in general was an open and obvious hazard would not have entitled the City to summary judgment on the Hawsmans' claims. On that basis, we sustain the Hawsmans' assignment of error.

THE CITY'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN FAILING TO GRANT THE CITY'S MOTION FOR SUMMARY JUDGMENT BASED UPON POLITICAL SUBDIVISION TORT IMMUNITY.

THE CITY'S ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN FAILING TO GRANT THE CITY'S MOTION FOR SUMMARY JUDGMENT BASED UPON THE THEORY THAT HAWSMAN FAILED TO PROVE THAT THE CITY HAD ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF THE ALLEGED DEFECT.

{¶20} In the City's first assignment of error, it argues that it was entitled to summary judgment on the basis of political subdivision immunity. In its second assignment of error it asserts that the trial court erred in failing to grant summary judgment to the City on the basis that the City had no knowledge of the alleged defect and/or it did not create the defect.

Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a three-tiered analysis. The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. However, that immunity is not absolute.

The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. * * *

If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability.

(Internal citations and quotations omitted.)  *Riffle v. Physicians & Surgeons Ambulance Serv., Inc.*, 135 Ohio St.3d 357, 2013-Ohio-989, ¶ 15.

{¶21}  Specifically at issue in this appeal is R.C. 27744.02(B)(4), which states:

Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses * * *.

{¶22}  The City asserts that the trial court failed to examine the facts and evidence and apply those facts to R.C. 2744.02(B)(4) to determine whether there was employee negligence and a physical defect in the diving board that caused Michael Hawsman's injury.  While we agree that the initial portion of the trial court's entry which discusses immunity does seem to indicate that the trial court believed immunity under R.C. 2744.02(B)(4) was no longer an issue, later in the entry, the trial court goes on to find that there were genuine issues of material fact with respect to whether there was employee negligence and whether there was a physical defect. Accordingly, the trial court did consider the issues the City asserts it ignored.

**{¶23}** Additionally, the City asserts there was no evidence that employee negligence caused a physical defect in the diving board that caused Michael Hawsman's injury. Because physical defect is not defined in the statute, courts have applied the common meaning of the phrase. In *Hamrick v. Bryan City School Dist.,* 6th Dist. Williams No. WM-10-014, 2011-Ohio-2572, the court examined the definitions of both "physical" and "defect": The word "physical" has been defined as "'having a material existence: perceptible esp[ecially] through senses and subject to the laws of nature.'" *Id.* at ¶ 28, quoting *Merriam Webster's New Collegiate Dictionary* (10th Ed.1996) 877. Whereas the dictionary defines a "defect" as "'an imperfection that impairs worth or utility.'" *Hamrick* at ¶ 28, quoting *Merriam Webster's New Collegiate Dictionary* at 302. It would seem then that a "physical defect" is an imperfection that possesses some materiality that diminishes the worth or utility of the object at issue. *See Hamrick* at ¶ 28; *see also R.K. v. Little Miami Golf Ctr.,* 1st Dist. Hamilton No. C-130087, 2013-Ohio-4939, ¶ 16.

**{¶24}** Michael Hawsman testified at his deposition about the events surrounding his accident at the Natatorium on May 12, 2006, when he was 12. He indicated that he had gone to the Natatorium with a couple friends and that the accident happened around 9:30 p.m. While this day at the Natatorium was the first time he had used the diving board, he had used the diving board that evening a couple times prior to his accident. He stated that, before he was injured, he and some friends were playing basketball and then racquetball prior to going swimming. Once in the pool, Michael Hawsman and his friends

> were swimming at the other end of the pool. [They] decided [they] were going to jump off the diving board. [They] got out of the pool. * * * And as [he] was walking out to the edge of the diving board, [he] had just gotten past the rails, [his] left foot slipped out from underneath of [him], and the first thing hit the diving board was [his] knee. It hit [his] knee, and [he] fell into the water.
>
> As [he] got in the water, [he] didn't think that anything had happened until [he] went to kick [his] leg, and [he] couldn't kick it.

**{¶25}** When asked to describe the condition of the diving board, he testified that "[i]t was very slippery[]" and as soon as he stepped on it, "it felt like there was no grip." Michael Hawsman averred that it was slippery the first time he used the board but did not report the board's condition to anyone. When asked to elaborate about the condition of the board, Michael Hawsman stated that "[i]t almost felt like there was – I don't know how to explain it. It was just like gooey. There wasn't any grip on it. * * * I don't know how to explain it. It was just mushy. Not necessarily mushy, but – I don't know how to explain the feeling of it."

**{¶26}** While there was testimony that indicated that Michael Hawsman was acting inappropriately on the diving board that day, i.e. that he was warned not to double bounce on the board, he denied those allegations at his deposition. Additionally, there were no other accidents on the diving board that evening, and no one complained about the diving board being slippery.

**{¶27}** Joel Thorson, one of the lifeguards on duty at the Natatorium that night and who at the time of his deposition was an aquatics manager, was monitoring the slide at the time of Michael Hawsman's injury. In Mr. Thorson's written statement made prior to his deposition, he indicated that the lifeguard who rescued Michael Hawsman indicated that, prior to the injury, the lifeguard whistled at him to let him know that double bouncing on the board was prohibited. It is unclear at what time in the evening the lifeguard whistled at Michael Hawsman. Mr. Thorson next described hearing a whistle and looking over at the diving board. He saw "'[Michael Hawsman] bounce one more time and as he came down, his foot was off the side of the board and he landed straight down onto his knee.'"

**{¶28}** The diving board at issue had a nonskid surface. Aside from testimony related to the accident, the care and maintenance instructions for the diving board were discussed. While the entirety of the manual is not in the record, portions of it were read into various individuals'

depositions. The care and maintenance instructions indicate that three things can cause the board to become slippery: (1) "[d]irt and oil from swimmers and sunbathers[;]" (2) "[e]xcessive wear; or years of normal wear[;]" and (3) "[e]xcessive alkalinity or excessive minerals in the water." Those instructions also indicate that the diving board must be taken out of service if it becomes slippery. The maintenance supervisor for the Natatorium, Todd Burdette, agreed that the nonskid surface of the diving board would become slippery if not cleaned properly. He testified that his department was responsible for the monthly maintenance of the diving board according to the manufacturer's instructions. However, he indicated that his department was not responsible for the daily maintenance, i.e. hosing the board off with water and checking the surface of the board while wet each day, as such would have been the responsibility of the aquatics department. Mr. Burdette stated that, prior to Michael Hawsman's accident, records were not kept of the monthly cleaning, but they were kept at some point subsequent to Michael Hawsman's accident. Mr. Burdette also testified that the diving board was replaced in 2008 but the replacement was not related at all to Michael Hawsman's accident. The aquatics supervisor, Kimberly Wood averred that she did not observe any defects in the diving board.

{¶29} Ms. Wood also testified that the responsibility for inspecting the diving board on a day-to-day basis would belong to the pool manager. She acknowledged that the manufacturer's instructions state that "'the surface must be tested and found to be sufficiently nonskid while the surface is wet by the pool manager when put into use, i.e., each season'" and that the "'[p]ool manger must instruct the lifeguard to test the surface while wet each day at the start of his or her shift of duty[.]'" Ms. Wood agreed that it was reasonable to believe that, if the manufacturer's instructions were not followed, then a dangerous problem with the diving board might occur. Ms. Wood testified that even since Michael Hawsman's accident the lifeguards have not been

charged with inspecting or cleaning the diving board before the start of their shifts. However, she also testified that she did not believe that the board would become slippery if it was not checked daily as required by the instructions. She indicated that, because the board was an indoor board, she did not think the board would be exposed to the type of conditions that would lead to a deterioration of the nonskid surface.

{¶30} Mr. Thorson indicated that, while he agreed that the manufacturer's instructions state that the board should be hosed off with fresh water daily and the nonskid surface should be tested daily when wet, those actions were not performed by the lifeguards. Mr. Thorson stated that, as an aquatics manager, he does test the board, but he does so when it is dry and only does that "occasionally[.]" He further testified that he does not check the nonskid surface every day. There is no testimony in the record that evidences that anyone at the Natatorium performed the daily cleaning and maintenance of the diving board as recommended by the manufacturer.

{¶31} Given the evidence in the record, we cannot say that the trial court erred in concluding that genuine issues of material fact exist with respect to whether the employees of the Natatorium were negligent in maintaining and cleaning the diving board and with respect to whether that negligence caused a physical defect that led to Michael Hawsman's injury.

{¶32} There was ample evidence in the record that the employees of the Natatorium failed to follow the daily cleaning and maintenance protocol provided by the manufacturer of the diving board. There was testimony from Mr. Burdette that he agreed that the nonskid surface of the diving board would become slippery if not cleaned properly. The totality of the manufacturer's instructions present in the record indicate, when viewing them in a light most favorable to the Hawsmans, that the maintenance and cleaning of the board prevents it from

becoming slippery, that a slippery diving board is not the natural state of this diving board, that a slippery diving board is dangerous, and that such a board must be taken out of service.

{¶33} Further, Michael Hawsman's testimony provides evidence of a physical defect in the board, i.e. a perceivable imperfection that diminished its utility: he testified that the board was "very slippery" and "felt like there was no grip." *See Hamrick,* 2011-Ohio-2572, at ¶ 28; *see also R.K.,* 2013-Ohio-4939, at ¶ 16. Additionally, in describing the condition of the board, he described it as being something akin to "gooey" and/or "mushy." Finally, it is clear from Michael Hawsman's testimony that, based upon his personal experience of the accident, he asserts that his injury was caused by this problem in the surface of the diving board. Viewing that testimony in a light most favorable to the Hawsmans, a reasonable trier of fact could conclude that the employees' failure to follow the care instructions of the diving board caused the board to become very slippery, i.e. something akin to being gooey or mushy, and that such condition was a physical defect in the surface of the board.

{¶34} We note that the trial court did not consider the City's expert's report and testimony and the City has not challenged this exclusion on appeal. Accordingly, while Michael Hawsman's testimony only provides circumstantial evidence of a physical defect in the board, there is no testimony from an expert that provides evidence that the board did not have a physical defect. Accordingly, the City's first assignment of error is without merit.

{¶35} The City asserts in its second assignment of error that, if there was a defect in the diving board, the City did not have knowledge of it and/or did not create the defect in the board and, thus, it was not liable. In making this argument, the City relies upon slip-and-fall cases. Assuming without deciding that such a comparison is warranted in this case, we proceed to consider the City's contention.

**{¶36}** In slip and fall cases, to establish that the owner or occupier failed to exercise ordinary care, the invitee must establish that

> "1. That the defendant through its officers or employees was responsible for the hazard complained of; or 2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or 3. That such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care."

*Tyson v. Dolgencorp, L.L.C.,* 9th Dist. Summit No. 25859, 2012-Ohio-458, ¶ 3, quoting *Johnson v. Wagner Provision Co.*, 141 Ohio St. 584, 589 (1943); *see also Price v. United Dairy Farmers, Inc.,* 10th Dist. Franklin No. 04AP-83, 2004-Ohio-3392, ¶ 6.

**{¶37}** It is clear to this Court that, at the very least, there exists a genuine issue of material fact with respect to whether the City created the defect in the surface of the diving board. As discussed above, there was evidence that the failure to adequately follow the manufacturer's instructions could result in the board becoming unnaturally slippery. Additionally, there was evidence that the City's employees failed to follow the daily maintenance routine articulated by the manufacturer and there was no evidence presented that the City complied with the daily maintenance instructions. Finally, Michael Hawsman described during his deposition what could be labeled as a defect and/or hazardous condition in the diving board, and it is clear that, based on his experience, he asserted that the condition of the board caused him to slip and fall. Thus, the City has not demonstrated that the trial court erred in failing to find for the City on this issue. A reasonable trier of fact could conclude that the City created the hazardous condition by failing to comply with the daily maintenance recommended by the manufacturer. The City's second assignment of error is overruled.

III.

**{¶38}** In light of the foregoing, we reverse the Summit County Court of Common Pleas' grant of summary judgment to the City and overrule the City's assignments of error.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

EVE V. BELFANCE
FOR THE COURT

GALLAGHER, J.
CONCURS.

CARR, J.
CONCURRING IN JUDGMENT ONLY.

{¶39} I agree that this matter must be remanded to the trial court. I would do so, however, with instructions that the trial court consider the issue of the City's duty relative to a child plaintiff before determining the applicability of the open and obvious doctrine.

{¶40} Critically, "[t]he open and obvious doctrine relates to the threshold issue of duty and provides that the owner of a premises owes no duty to those people entering the premises regarding dangers that are open and obvious." *Kirksey v. Summit Cty. Parking Garage*, 9th Dist. Summit No. 22755, 2005-Ohio-6742, ¶ 8. Whether the premises owner owes a duty is a question of law. *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989). I agree with the majority's statement of law that the determination whether a hazard was open and obvious, i.e., whether the premises owner maintained a duty to warn, depends on whether a reasonable person, in consideration of the totality of the circumstances, would have discovered the danger. *Marock v. Barberton Liedertafel*, 9th Dist. Summit No. 23111, 2006-Ohio-5423, ¶ 14. In making the determination as to the existence of a duty to the injured plaintiff, the law has long recognized a distinction between adults and children of tender years. The Ohio Supreme Court explained:

> [T]he amount of care required to discharge a duty owed to a child of tender years is necessarily greater than that required to discharge a duty owed to an adult under the same circumstances. This is the approach long followed by this court and we see no reason to abandon it. "Children of tender years, and youthful persons generally, are entitled to a degree of care proportioned to their inability to foresee and avoid the perils that they may encounter * * *. The same discernment and foresight in discovering defects and dangers cannot be reasonably expected of them, that older and experienced persons habitually employ; and therefore, the greater precaution should be taken, where children are exposed to them." 39 Ohio Jurisprudence 2d 512, Negligence, Section 21.

*Di Gildo v. Caponi*, 18 Ohio St.2d 125, 127 (1969).

{¶41} The duty that a premises owner owes to a child is distinct from the duty owed to an adult. *Uddin v. Embassy Suites Hotel*, 165 Ohio App.3d 699, 2005-Ohio-6613, ¶ 21 (10th Dist.), citing *Di Gildo* at 127. *Uddin* involved a ten-year old drowning victim whom the appellate court described as a child of tender years. *Id.* at ¶ 21. In this case, Michael Hawsman was twelve years old when he was injured while using the City's diving board. The *Uddin* court distinguished a case involving an eighteen-year old drowning victim, concluding that "an age difference [between ten and eighteen years] is not insignificant." *Id.* at ¶ 20. I do not believe that a twelve-year old is substantially more knowledgeable and experienced than a ten-year old so as to be likened to an eighteen-year old. A twelve-year old child fits within the category of "youthful persons generally." *See Di Gildo, supra*. In consideration of Michael's "inability to foresee and avoid the perils that [he] may encounter," an element of the totality of the circumstances present in this case, the trial court must determine whether the City owed a heightened duty to Michael based on his status as a child. It made no such determination here, instead analyzing the issue of the City's duty as though Michael were an injured adult. The issue of the appropriate duty owed relative to the child must be determined before it can be determined whether the hazard was open and obvious. Accordingly, I would remand the matter to the trial court for determination of this issue in the first instance.

(Gallagher, E., of the Eighth District Court of Appeals, sitting by assignment.)

APPEARANCES:

KIMBERLY C. YOUNG and WILLIAM J. PRICE, Attorneys at Law, for Appellants.

RUSSELL W. BALTHIS, Law Director, and HOPE L. JONES, Assistant Law Director, for Appellee.