[Cite as *Cuyahoga Falls v. Gaglione*, 2017-Ohio-6974.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| CITY OF CUYAHOGA FALLS, et al. | C.A. No.    28513 |
| Appellants | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JUSTIN GAGLIONE | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | CASE No.    CV-2016-05-2160 |

DECISION AND JOURNAL ENTRY

Dated: July 26, 2017

TEODOSIO, Judge.

{¶1}    Defendant-Appellants, the City of Cuyahoga Falls and the City of Cuyahoga Falls Parks & Recreation Department (collectively, "the City"), appeal from the judgment of the Summit County Court of Common Pleas, denying their motion for summary judgment on the issue of sovereign immunity. This Court affirms.

I.

{¶2}    Plaintiff-Appellee, Justin Gaglione, was playing basketball at the Natatorium in Cuyahoga Falls when he slipped and fell on a puddle of water that had collected on the floor next to the basketball court. The fall rendered Mr. Gaglione unconscious for a brief period of time and caused him to seek treatment for a concussion. Mr. Gaglione later learned that the City knew about the puddle before he fell, but had not cleaned the area, posted signs in the area, or otherwise taken measures to prevent its patrons from slipping.

{¶3}    Mr. Gaglione brought a personal injury suit against the City, in which he alleged that he had been injured as a result of the City's negligence.  The City responded and, in its answer, pleaded sovereign immunity.  Following a period of discovery, the City moved for summary judgment on the basis of immunity, and Mr. Gaglione filed a brief in opposition.  The City then filed a reply brief, and Mr. Gaglione filed a sur-reply.  Upon review of the filings, the trial court determined that genuine issues of material fact remained for trial.  It, therefore, denied the City's motion.

{¶4}    The City now appeals from the trial court's denial of its motion for summary judgment and raises three assignments of error for our review.  For ease of analysis, we combine its assignments of error.

II.

### ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ERRED IN HOLDING THAT THE EXCEPTION TO R.C. §2744.02(B)(4) MAY APPLY TO DEFEAT THE CITY'S IMMUNITY FROM LIABILITY UNDER §2744.02(A).

### ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ERRED IN HOLDING THAT THE IMMUNITY DEFENSE IN R.C. §2744.03(A)(5) DOES NOT APPLY.

### ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED IN FAILING TO GRANT THE CITY'S MOTION FOR SUMMARY JUDGMENT BECAUSE GAGLIONE FAILED TO PROVE NEGLIGENCE.

{¶5}    In its assignments of error, the City argues that the trial court erred when it denied its motion for summary judgment on the basis of sovereign immunity.  We do not agree that the trial court erred.

**{¶6}** "The denial of a motion for summary judgment is not ordinarily a final, appealable order." *Elton v. Sparkes*, 9th Dist. Summit No. 27684, 2016-Ohio-1067, ¶ 8, quoting *Buck v. Reminderville*, 9th Dist. Summit No. 27002, 2014-Ohio-1389, ¶ 5. "However, R.C. 2744.02(C) provides that '[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order.'" *Elton* at ¶ 8, quoting R.C. 2744.02(C). "Accordingly, the denial of the City's motion for summary judgment, to the extent that it denied the City the benefit of immunity, is properly before us." *Ponyicky v. Brunswick*, 9th Dist. Medina No. 15CA0097-M, 2017-Ohio-37, ¶ 6.

**{¶7}** Appellate review of an award of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Pursuant to Civ.R. 56(C), summary judgment is proper only if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

**{¶8}** The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996). "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Id.* at 293. Only where the moving party fulfills this initial burden, does the burden shift to the nonmoving party to prove that a genuine issue of material fact exists. *Id.* "[T]he

nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial * * *." *Id.*

{¶9} "In order to determine whether a political subdivision is immune from liability, we engage in a three-tiered analysis." *Moss v. Lorain Cty. Bd. of Mental Retardation*, 9th Dist. Lorain No. 13CA010335, 2014-Ohio-969, ¶ 10, citing *Cater v. Cleveland*, 83 Ohio St.3d 24, 28 (1998). The first tier sets forth the premise that,

> [e]xcept as provided in division (B) of [R.C. 2744.02], a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

R.C. 2744.02(A)(1). "At the second tier, this comprehensive immunity can be abrogated pursuant to any of the five exceptions set forth at R.C. 2744.02(B)." *Shalkhauser v. Medina*, 9th Dist. Medina Nos. 3238-M & 3249-M, 2002-Ohio-222, ¶ 16. "Lastly, immunity may be restored, and the political subdivision will not be liable, if one of the defenses enumerated in R.C. 2744.03(A) applies." *Moss* at ¶ 10.

{¶10} It is undisputed that the City is a political subdivision and that Mr. Gaglione brought suit against it for an act performed or omitted "in connection with a governmental * * * function." R.C. 2744.02(A)(1). *See also M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, ¶ 7 (maintenance and operation of the City's Natatorium is a governmental function). The parties also agree that this matter only concerns one possible exception to immunity (the physical defect exception contained in R.C. 2744.02(B)(4)) and one possible defense to liability (the discretionary defense contained in R.C. 2744.03(A)(5)). We, therefore, limit our review to that exception and defense. Further, because negligence must be proven in connection with the

physical defect exception, we address the City's negligence argument in our discussion of R.C. 2744.02(B)(4).

**The Second Tier: R.C. 2744.02(B)(4)**

{¶11} R.C. 2744.02(B)(4) provides that

> political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function * * *.

The exception, therefore, applies upon proof that an injury was "(1) caused by employee negligence; (2) on the grounds or buildings used in connection with the performance of that governmental function; and (3) due to a physical defect on or within those grounds or buildings." *Gibbs v. Columbus, Metro. Hous. Auth.*, 10th Franklin No. 11AP-711, 2012-Ohio-2271, ¶ 10. *See also Dunfee v. Oberlin Sch. Dist.*, 9th Dist. Lorain No. 08CA009497, 2009-Ohio-3406, ¶ 13. The City argues that Mr. Gaglione failed to prove either that its employees were negligent or that he was injured as a result of a "physical defect."

<u>Negligence</u>

{¶12} A claim of negligence requires a plaintiff to prove "the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach of duty." *Mondi v. Stan Hywet Hall & Gardens, Inc.*, 9th Dist. Summit No. 25059, 2010-Ohio-2740, ¶ 11. Generally, business owners owe their invitees "a duty of ordinary care in maintaining [their] premises in a reasonably safe condition [as well as a] duty to warn * * *of latent or hidden dangers." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 5. "When applicable, however, the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." *Id.* "The rationale behind the doctrine is that the open and obvious

nature of the hazard itself serves as a warning. Thus, the owner * * * may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644 (1992). "Open and obvious dangers are not hidden, are not concealed from view, and are discoverable upon ordinary inspection." *Zambo v. Tom-Car Foods*, 9th Dist. Lorain No. 09CA009619, 2010-Ohio-474, ¶ 8. "The determinative issue is whether the condition is observable." *Kirksey v. Summit Cty. Parking Deck*, 9th Dist. Summit No. 22755, 2005-Ohio-6742, ¶ 11.

{¶13} The City first argues that it did not owe a duty to Mr. Gaglione because the puddle on which he slipped was an open and obvious danger. The City argues that the puddle was not concealed from view and, had he been attentive, Mr. Gaglione would have observed it. According to the City, Mr. Gaglione chose not to exercise caution when he chased a ball out of bounds and slipped on the puddle.

{¶14} The City presented limited evidence in support of its argument that the puddle was an open and obvious danger. Paige Asche, the Natatorium's former Facility Manager, inspected the puddle before Mr. Gaglione's fall. She could not recall any details about the puddle when deposed, but did note in an incident report that it "was nowhere [] on the court or in the players (sic) way." Only three individuals were deposed and, apart from Mr. Gaglione, none of them were able to offer testimony describing the puddle.

{¶15} In his deposition, Mr. Gaglione testified that, after he arrived at the Natatorium, he played one basketball game without incident. During the second game, however, he chased a ball out of bounds and slipped "right by the out of bounds line." He testified that he did not know any water was there until he slipped. He also testified that he would not have seen the puddle even if he was looking because it was "clear colored" and located on the glazed gym

floor. In support of his brief in opposition, Mr. Gaglione also submitted a security recording that captured the moment he fell as well as a period of time before and after his fall. The recording depicts three other individuals slipping and falling in the same location as Mr. Gaglione within minutes of his fall.

{¶16} Having reviewed the record, we must conclude that a genuine issue of material fact exists as to whether the puddle that caused Mr. Gaglione to fall was an open and obvious danger. As noted, in an open and obvious danger analysis, "[t]he determinative issue is whether the condition [was] observable." *Id.* Though Ms. Asche was able to see the puddle, the record reflects that she had been told about it before she saw it. Mr. Gaglione testified that, due to the clear color of the water and the nature of the gym floor, the puddle blended in and was not readily observable. Additionally, he presented security footage that showed three others slipping on the same spot within a brief time period. The record contains conflicting evidence as to whether the puddle was, in fact, observable upon ordinary inspection. Thus, a genuine issue of material fact remains on that issue, and the City was not entitled to summary judgment on the basis that it owed no duty to Mr. Gaglione. *See Armstrong*, 99 Ohio St.3d 79, 2003-Ohio-2573, at ¶ 5 (open and obvious doctrine, when applicable, abdicates duty to warn).

{¶17} The City next argues that it was entitled to judgment under R.C. 2744.02(B)(4) because there was no evidence that it breached any duty it owed to Mr. Gaglione.

> To prevail in a case where the plaintiff has allegedly slipped on a foreign substance on the floor of the defendant's premises, the plaintiff must establish:
>
> "(1) that the defendant through its officers or employees was responsible for the hazard complained of; or (2) that at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or (3) that such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or to remove it was attributable to a want of ordinary care."

*Stetz v. Copley Fairlawn Sch. Dist.*, 9th Dist. Summit No. 27432, 2015-Ohio-4358, ¶ 11, quoting *Tyson v. Dolgencorp, L.L.C.*, 9th Dist. Summit No. 25859, 2012-Ohio-458, ¶ 3, quoting *Johnson v. Wagner Provision Co.*, 141 Ohio St. 584, 589 (1943). According to the City, it was not negligent because Ms. Asche was taking reasonable steps to address the puddle at the time Mr. Gaglione slipped.

{¶18} In her deposition, Ms. Asche testified that she was aware that the Natatorium suffered from roof leaks when it rained. She indicated that it was raining the day Mr. Gaglione fell and that wet floor signs and buckets had been placed in certain areas of the facility, including the upper fitness and indoor track areas. Ms. Asche could not recall the majority of the details surrounding this incident, but agreed that she completed an incident report directly after it occurred. In the incident report, she wrote that a patron approached her at approximately 5:00 p.m. and told her the gym ceiling was leaking. She wrote that she then went to the gym and saw that the leak "was nowhere [] on the [basketball] court or in the players (sic) way." After spotting the leak, Ms. Asche attempted to find a wet floor sign or bucket to place in the area, but could find neither because all the available signs and buckets were in use. She estimated that she looked for a sign or bucket for eight to fifteen minutes before returning to the front desk to help with a line that had formed. She testified that she "literally just walked up there" when Mr. Gaglione's brother ran up and told her that Mr. Gaglione had been injured.

{¶19} Ms. Asche agreed that her incident report described the leak in the gym as being located "on NW corner by curtain" and "Not on court – all the way up front." Although she could not recall many details about the leak at the time of her deposition, including its exact size or location, she testified that she "assum[ed]" the leak was located there because "when there'd be leaks in the gym, that's where the leak would usually occur * * *." Ms. Asche did not recall

telling anyone about the leak during the time period between when it was reported and when Mr. Gaglione fell. She acknowledged that the area did not get cleaned and posted with a wet floor sign until after he fell.

{¶20} As support for its motion for summary judgment, the City presented the court with two affidavits. The first affidavit was that of Heather Novelli, the Operations Supervisor for the Natatorium. In her affidavit, Ms. Novelli averred that, "[i]n [her] twelve years as an employee of the Natatorium, [she] [had] never seen a leak at the location where [Mr. Gaglione's fall] occurred." The second affidavit was that of Todd Burdette, the Maintenance Supervisor for the Natatorium. In his affidavit, Mr. Burdette acknowledged that the Natatorium's roof leaked, but averred that, since Mr. Gaglione's fall, "[t]he specific area where [he] fell [had] not been reported as a wet area * * *." The City used both affidavits as evidence that its employees did not have prior knowledge of a problem with a leak in the gym and that it was not a habitual leak.

{¶21} The City also based its summary judgment motion on certain deposition testimony. It noted that Mr. Gaglione described having gone directly to the basketball courts when he arrived. It further noted that he admitted it was raining outside, but that he could not recall if he had changed his shoes before he began playing. There is no dispute that Mr. Gaglione fell at 5:08 p.m., as security footage captured his fall. The City argued that a relatively short period of time elapsed between Ms. Asche learning about the leak and Mr. Gaglione's fall. Assuming his fall occurred due to the leak and not his wet shoes, the City argued that Ms. Asche was taking reasonable steps to address the leak before his fall occurred. Because Ms. Asche acted reasonably in dealing with the leak while simultaneously handling her other duties, the City argued, it did not breach any duty to Mr. Gaglione.

{¶22} In opposing the City's motion, Mr. Gaglione pointed to the portion of Ms. Asche's deposition in which she specifically stated that leaks in the gym "usually occur[red]" in the location described in her incident report (i.e., the location where Mr. Gaglione fell). Mr. Gaglione argued that her testimony was evidence of the City's prior knowledge of a problem with a leak in that area. He further noted that Ms. Asche admitted that she returned to the front desk to perform other duties without remedying the leak or warning anyone else of its existence. Once again, Mr. Gaglione cited as evidence the security footage, showing that a total of four people, including Mr. Gaglione, fell in the same spot within a relatively short time span.

{¶23} Having reviewed the record, we must conclude that genuine issues of material fact remain with regard to whether the City breached the duties it owed Mr. Gaglione as a business invitee. While the City did not create the hazard that injured Mr. Gaglione, he set forth evidence that Ms. Asche had actual knowledge of it and returned to her normal duties without addressing the problem. *See Stetz*, 2015-Ohio-4358, at ¶ 11, quoting *Tyson*, 2012-Ohio-458, at ¶ 3, quoting *Johnson*, 141 Ohio St. at 589. Although the City set forth evidence that only a brief window elapsed between Ms. Asche receiving notice of the leak/puddle and Mr. Gaglione's fall, Mr. Gaglione presented enough evidence to create at least a genuine issue of material fact as to the reasonableness of her actions. Moreover, he set forth evidence that the City had knowledge of the leak long before his fall occurred, as Ms. Asche specifically stated that leaks in the gym "usually occur[red]" in that area. Upon review, the trial court did not err when it concluded that the City was not entitled to summary judgment on the issue of negligence.

Physical Defect

{¶24} As noted, the immunity exception set forth in R.C. 2744.02(B)(4) only applies if a person was injured as a result of "physical defects within or on the grounds of[] buildings that

are used in connection with the performance of a governmental function * * *." "[B]ecause the term 'physical defect,' is not defined in Chapter 2744, 'courts have applied the common meaning of the phrase.'" *Moss v. Lorain Cty. Bd. of Mental Retardation*, 9th Dist. Lorain No. 15CA010767, 2016-Ohio-169, ¶ 11, quoting *Hawsman v. Cuyahoga Falls*, 9th Dist. Summit No. 27221, 2014-Ohio-4325, ¶ 23. This Court has recognized "that a 'physical defect' is an imperfection that possesses some materiality that diminishes the worth or utility of the object at issue." *Hawsman* at ¶ 23.

{¶25} The City argues that Mr. Gaglione was not injured as the result of a physical defect because "[t]he failure to post warning signs is not a 'physical defect' under R.C. §2744.02(B)(4)." It further argues that the basketball court was not defective because the puddle was located off the court.

{¶26} The trial court did not base its physical defect finding on the City's alleged failure to post warning signs or the condition of the basketball court itself. The court specifically found that Mr. Gaglione set forth evidence of a physical defect in the form of the Natatorium's leaky roof, a defect that resulted in a water accumulation on the gym floor. In its brief, the City has not addressed the trial court's finding to that effect. *See* App.R. 16(A)(7).

{¶27} Several individuals either testified or averred that the Natatorium suffered from roof leaks and that the City would put out either wet floor signs or buckets when rain caused it to leak. Moreover, Ms. Asche specifically testified that the leak in the gym "usually occur[red]" in the same location, which was the location where Mr. Gaglione fell. Mr. Gaglione, therefore, set forth evidence that a physical defect (i.e. the leaky roof) caused his injury, and the trial court did not err by denying the City summary judgment on that issue. *See Hawsman* at ¶ 23 (defining "physical defect").

{¶28} Upon review, we must conclude that genuine issues of material fact remain as to the applicability of the physical defect exception to sovereign immunity. Accordingly, the trial court did not err when it denied the City's motion for summary judgment on the basis of R.C. 2744.02(B)(4). The City's first and third assignments of error are overruled.

**The Third Tier: R.C. 2744.03(A)(5)**

{¶29} Under the third tier of a sovereign immunity analysis, a political subdivision's immunity may be restored "if one of the defenses enumerated in R.C. 2744.03(A) applies." *Moss*, 2014-Ohio-969, at ¶ 10. The statute provides, in relevant part, that

> [t]he political subdivision is immune from liability if the injury * * * to person * * * resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

R.C. 2744.03(A)(5). "Courts must construe the R.C. 2744.03(A)(5) discretionary defense narrowly." *Calet v. E. Ohio Gas Co.*, 9th Dist. Summit No. 28036, 2017-Ohio-348, ¶ 17.

{¶30} The City argues that the trial court erred by not awarding it summary judgment on the basis of R.C. 2744.03(A)(5) because Ms. Asche engaged in a series of discretionary decisions in response to the leak/puddle in the gym. Specifically, the City argues that she chose not to remove a wet floor sign or bucket "already in use at another more populous area" and made judgment calls "about the use of the Natatorium's resources in order to best address [the situation] for all of the patrons." Upon review, we cannot conclude that the type of discretionary decisions Ms. Asche made are governed by R.C. 2744.03(A)(5).

{¶31} As noted, the discretionary defense contained in R.C. 2744.03(A)(5) must be narrowly construed. *Id.* "The defense * * * pertains to decisions involving a heightened degree of official judgment or discretion," rather than routine decisions. *Id.*; s*ee Perkins v. Norwood*

*City Schools*, 85 Ohio St.3d 191, 193 (1999); *E. Ohio Gas Co. v. Akron*, 9th Dist. Summit No. 25830, 2012-Ohio-3780, ¶ 8. Ms. Asche's choice not to borrow a wet floor sign or bucket from another area did not involve a "heightened degree of official judgment or discretion." *Calet* at ¶ 17. Notably, she testified that she borrowed a wet floor sign from the pool area right after Mr. Gaglione's fall because there were "an excessive amount of wet floor signs" in that area. Thus, while Ms. Asche might not have initially thought to check the pool area for signs, the record does not support the conclusion that she had to make a discretionary decision "concerning the allocation of scarce resources." *E. Ohio Gas Co.* at ¶ 8, quoting *Hall v. Fort Frye Local Sch. Dist. Bd. of Edn.*, 111 Ohio App.3d 690, 699 (4th Dist.1996). Instead, the record reflects that she made a routine decision when she chose to stop her search efforts and to return to the front desk without addressing the leak/puddle. *See, e.g., Perkins* at 193. Because the trial court correctly concluded that R.C. 2744.03(A)(5) does not apply here, it did not err by denying the City's motion for summary judgment. The City's second assignment of error is overruled.

III.

{¶32} The City's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

RUSSELL W. BALTHIS, Director of Law, JANET M. CIOTOLA, Deputy Law Director, and MATTHEW A. DICKINSON, Assistant Director of Law, for Appellants.

JOHN M. HERRNSTEIN, Attorney at Law, for Appellee.